The Honorable Billy Joe Purdom State Representative Route 1, Box 135B Yellville, AR 72687-9605
Dear Representative Purdom:
This is in response to your request for an opinion on several questions involving certain petitions for referendum that were circulated in the City of Bull Shoals and filed with the city clerk. Your five questions concerning the validity of the petitions are as follows:
 1. Under Arkansas Code Annotated 7-9-106, are these petitions valid, considering that only two of the 26 petitions circulated had a copy of the measure for which referendum was sought attached to the petition?
 2. Is the Ordinance prescribing the hours of employment for the mayor an administrative matter, and therefore subject to referendum?
 3. Is the fixing of the mayor's salary by the Resolution an administrative matter, and therefore subject to referendum?
 4. Are administrative matters, acted upon by the City Council, subject to referendum?
 5. What effect, if any, does the decision of the City Council declaring the Ordinance and Resolution administrative matters, have in this case?
If, in fact, a "full and correct copy of the measure" was not attached to the petitions when they were circulated, then it is my opinion in response to your first question that the petitions are likely invalid. This will, of course, require a factual determination that falls outside the scope of an opinion from this office.
As you note, the relevant statutory provision is A.C.A. § 7-9-106 (Repl. 1993),[1] which states as follows under subsection (b):
 To every petition for the referendum shall be attached a full and correct copy of the measure on which the referendum is ordered.
Petitions may, of course, be "circulated and presented in parts," in accordance with Amendment 7 to the Arkansas Constitution (see section entitled "Verification" under "THE PETITION"). It is clear, moreover, as stated by the Arkansas Supreme Court, that "[i]t is not necessary that a full and correct copy of the measure be attached to each sheet of the petition." Bradley v. Galloway, 279 Ark. 231, 234, 651 S.W.2d 445 (1983),citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).[2] This assumes, however, that a copy of the measure is attached to each petition that is circulated "as a safeguard to the rights of the voters to whom the petition was offered for signature." Townsend v. McDonald, supra n. 1, 184 Ark. at 277. The court in Townsend described the purpose of §7-9-105 as follows:
 The people could not intelligently act on an initiative measure unless a copy of the measure itself was before them. The same reasoning would obtain in cases of a measure referred to the people. A full and correct copy of the measure attached to the petition would enable the signer thereto to act intelligently in the premises. . . . The statute was not passed as a mere matter of convenience or direction to be observed . . . by those circulating the petitions. . . . The act was passed as a safeguard to the rights of the voters to whom the petition was offered for signature. The requirement was intended to secure the voters whose interests were to be affected an opportunity to know what they were signing. . . .
184 Ark. at 276-277 (emphasis added). See also Westbrook v. McDonald,184 Ark. 740, 43 S.W.2d 356 (1931).
The court also stated that this requirement is mandatory, and not merely directory. 184 Ark. at 277. Thus, in my opinion, the city clerk would be justified in rejecting the petitions as insufficient if in fact a full and correct copy of the measure was not attached when the petitions were offered for signature. Whether this was in fact the case in this instance is for the clerk to determine, with the assistance perhaps of local counsel. It should perhaps be noted in this regard that according to the court in Townsend, supra, there must be "substantial compliance" with this requirement. 184 Ark. at 277. Thus, in my opinion, if an exact copy of the measure on which the referendum is ordered appears on the petition, the requirements of § 7-9-106 will likely have been satisfied. The signer in that instance will have been presented with a "full and correct copy of the measure" and the court's concern in Townsend will have been satisfied. If, however, the petition does not contain the full language of the measure, and if a full and correct copy of the measure was not attached to the petitions when they were circulated, then I believe a finding of compliance with § 7-9-106 is unlikely.
It is my opinion, in response to your second and third questions, that both the Ordinance and Resolution are subject to the referendum provisions of Amendment 7 to the Arkansas Constitution.
Amendment 7 reserves the power of referendum to the local voters of each municipality as to all "municipal legislation of every character. . . ." Ark. Const. amend. 7 ("LOCAL PETITIONS"). As noted by the Arkansas Supreme Court, however, "[n]ot all ordinances enacted by city councils come under the head of `municipal legislation.' City governments in Arkansas know no such complete separation of powers as would automatically classify all aldermanic activities as legislative in character." Scroggins v. Kerr, 217 Ark. 137, 142, 228 S.W.2d 995 (1950). Ordinances that are administrative or executive in character, rather than legislative, are not subject to referendum. Id. at 143.
The question in this instance, therefore, is whether the Ordinance declaring the position of mayor a full-time position and requiring a minimum of thirty-two hours per week, and the Resolution setting the mayor's salary, are administrative or legislative in character. According to my research, the Arkansas Supreme Court has addressed neither of these precise questions. As noted by at least one other court, however, the numerical weight of authority in other jurisdictions which have passed upon the question supports the proposition that the fixing of salaries is a proper subject for legislative action. Shriver v. Bench,6 Utah 2d 329, 331, 313 P.2d 475 (1975) (cases cited in n. 3). See also
82 C.J.S. Statutes § 121 (1953), at 208 (stating, generally, that "[a]n act . . . which creates or establishes any office, or changes the salary, term, or duty of any public officer is referable.") It is my opinion that the Arkansas Supreme Court would likely adhere to this view regarding a salary measure as subject to referendum, particularly in light of its consistent liberal interpretation of Amendment 7 to the Arkansas Constitution. See generally Bradley v. Galloway, supra; Fletcher v.Bryant, 243 Ark. 864, 422 S.W.2d 698 (1968).[3] Several cases involving county initiated salary acts also point to the conclusion that a local measure fixing the mayor's salary is generally referable. The court inTindall v. Searan, 192 Ark. 173, 90 S.W.2d 476 (1936), upheld the right of county electors to initiate an act fixing the salaries of certain county officers, stating that "[t]he fixing of salaries and compensation to be paid county officers is of peculiar interest to taxpayers of the county, and it was legislation of this kind that the people intended to provide for [under the Initiative and Referendum Amendment, i.e., Amendment 7]." See also Dew v. Ashley County, 199 Ark. 361,133 S.W.2d 652 (1939). The court thus viewed the fixing of compensation as legislative in nature and therefore subject to the initiative and referendum.
As to the Ordinance making the position full-time and setting the minimum hours, it is my opinion that this must also be characterized as legislative in nature. It is significant to note in this regard that the City Council is not simply prescribing particular duties, pursuant to its authority to "from time to time require [other duties compatible with the nature of the mayor's office]." A.C.A. § 14-43-504(b)(3) (Supp. 1995).[4] Action of that nature by the Council might be fairly characterized, generally, as administrative because the measure in that instance would arguably be a procedural device for administering or executing a law already in existence (i.e., § 14-43-504(b)), rather than a new law. Such a measure would not be referable, under the test which has been applied by the court in distinguishing administrative from legislative action. See generally Greenlee v. Munn, 262 Ark. 663,559 S.W.2d 928 (1978) and Scroggins v. Kerr, supra; see also City of NorthLittle Rock v. Gorman, 264 Ark. 150, 568 S.W.2d 481 (1978).
Declaring the office to be full-time and setting the minimum weekly hours thereof is, however, in my opinion, more in the nature of local legislation in that such action establishes the essential characteristics of the office. While the authority to enact such an ordinance may derive from the statutes pertaining to the mayor's duties (see A.C.A. §§14-43-302(b) and -504(b)(3)), in my opinion the Council is not merely carrying out existing law when it declares the office to be full-time. The Ordinance prescribes a new policy or plan, and does not simply pursue a plan already in place. See generally City of North Little Rock v.Gorman, supra.
The Arkansas Supreme Court has held, moreover, that a county quorum court may, pursuant to its local legislative authority, require that all county constitutional offices be open to serve the public from 8:00 a.m. until 4:30 p.m. Walker v. Washington Co., 263 Ark. 317, 564 S.W.2d 513 (1978). While we must be mindful of the fact that this case was decided in a different context (see Scroggins, supra, 217 Ark. at 144, regarding the importance of the context when identifying "legislative" action), the conclusion that the ordinance fell within the quorum court's locallegislative power cannot be ignored. 263 Ark. at 319. The City Council similarly possesses local legislative authority regarding city affairs. A.C.A. § 14-43-502(a) and Op. Att'y Gen. 96-328 at 3. In my opinion, a persuasive argument can be made that the Council exercises legislative, as opposed to administrative, power when it enacts an Ordinance declaring the position of mayor to be full-time and requiring a minimum of thirty-two hours per week. The Ordinance is, in my opinion, "municipal legislation" (Ark. Const. amend. 7), that is subject to the people's right of referendum.
Your fourth question is whether administrative matters are subject to referendum. The answer to this question is "no," as discussed above.
With regard to your last question concerning the effect of the City Council's declaration that the Ordinance and Resolution are administrative matters, it must be recognized that according to the Arkansas Supreme Court, "`[t]he form or name does not change the essential nature of the real step taken.'" Scroggins, supra, at 143,quoting 1 McQuillin, Municipal Corporations 1000 (2d ed., rev., 1940).See also Greenlee v. Munn, supra. As stated in Greenlee, "[t]he crucial test . . . is whether the action is one making a new law or one executing a law already in existence, regardless of the form or name put on the action. . . ." 262 Ark. at 666.
It is accordingly my opinion that the Council's designation of the action as administrative in this instance is not effective.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh
[1] I have previously opined that this Code section applies to local initiative and referendum petitions. Op. Att'y Gen. 90-123. The constitutionality of this provision was upheld in Townsend v. McDonald,184 Ark. 273, 42 S.W.2d 410 (1931).
[2] This is in recognition of the fact that petitions are often circulated in parts and include many sheets of signatures. A full and correct copy of the measure need not be attached to each such sheet. But, following a 1989 amendment to § 7-9-105, additional sheets of voter signatures must "contain the full language of the petition." A.C.A. §7-9-105(c) (Repl. 1993), added by Act 280 of 1989. It appears from the material included with your request that this requirement was complied with in this instance. The petition language is on the signature sheets.
[3] I have previously opined that a city's budget ordinance is not subject to referendum. Op. Att'y Gen. 97-022. This was in accord with the unanimous view in other jurisdictions that a city council's adoption of a municipal budget is an administrative rather than a legislative function. Id. at 4-5. This conclusion with respect to the preparation and approval of an entire budget is, however, in my opinion, distinguishable from the action taken under this Resolution whereby the salary of a specific official is established. The reluctance to subject the former to a referendum, and thereby potentially frustrate or impair efficient administration of the city's fiscal affairs, is understandable. But I do not believe that this same concern applies in the case of a salary resolution such as the one before us.
[4] I have opined that this provision, although applicable to cities of the first class, also applies by implication to cities of the second class. Op. Att'y Gen. 96-328 at 2.